170 So.2d 311 (1964)
Lloyd T. ELLINGSON, Appellant,
v.
Douglas F. WILLIS, Appellee.
No. F-84.
District Court of Appeal of Florida. First District.
December 29, 1964.
Truett & Watkins, Tallahassee, for appellant.
*312 Keen, O'Kelley & Spitz, Tallahassee, for appellee.
GOODING, MARION W., Associate Judge.
Appellant was the original defendant in a law action by the appellee seeking damages for the allegedly negligent operation of a motor vehicle by appellant which resulted in injuries to the appellant and the death of appellee's wife and infant son. Appellee sought both compensatory and punitive damages.
Answer was filed by appellant denying generally any negligence on his part, and specifically denying that any negligent operation of his motor vehicle caused or contributed to causing the death of appellee's wife and infant son.
The Jury returned a verdict in favor of the appellee:
"We, the jury find for the plaintiff and against the defendant and assess his damages at:

1. Compensation for his personal injuries $ 1,500.00
2. For punitive damages 0
3. Compensation for death of wife 45,000.00
4. Compensation for death of child 16,000.00
 __________
 TOTAL $62,500.00

 So say we all.
 Tallahassee, Florida, November 7, 1963.
 / R.E. Carter
 Foreman"
A claim for set off against judgment, pursuant to Section 54.28, Florida Statutes, F.S.A., was filed on behalf of the defendant, and the Court rendered its decision allowing a set off of $14,200.00, which was the amount of a settlement made previously by appellee with the operator of a third motor vehicle involved in the accident.
Final Judgment in favor of appellee was subsequently entered in the amount of $48,684.80, and it is from this Judgment that the appellant brings this appeal. A cross assignment of error was filed by the appellee solely to question the matter of the set off.
The testimony and evidence at the trial established that an accident occurred on Sunday, December 3, 1961, about 6:15 P.M. on State Road No. 10 at a point approximately 5 8/10th miles West of Tallahassee in Leon County, Florida, involving an automobile owned and operated by appellant, Ellingson, and one being operated by appellee, Willis, in whose automobile as passengers were appellee's wife and two minor children. The accident occurred immediately in front of a location known as Parkinson's Landing at the east end of a bridge across the Ochlocknee River. Immediately west of the bridge the highway is straight and level for approximately 1 3/10ths miles and immediately to the east of the bridge the view is level and clear for approximately 200 to 225 feet before a hill. The bridge is some 600 to 650 feet long.
Appellee, Willis', vehicle was proceeding from Quincy in an Easterly direction toward Tallahassee and as it proceeded across the bridge over the Ochlocknee River, appellant, Ellingson's, vehicle came out from the driveway leading into Parkinson's Landing and the two vehicles came into collision.
The vehicles stopped in a general "V" position on the highway with the Willis vehicle headed generally in a Northeasterly *313 direction and the Ellingson vehicle in a Northerly or Northwesterly direction.
Mrs. Willis was helping her infant son out of the car when a third vehicle operated by one James Ramsey ran directly between the two vehicles which had been involved in the first accident, and in the process Mrs. Willis and her infant son were killed. There is conflict in the testimony of the time elapsing between the first and second accidents varying from estimates of from two to four minutes.
We are not concerned in this appeal as to the responsibility for the initial accident. The only issue with which we are concerned here pertain to the responsibility for the second accident and the resulting deaths.
Appellant submitted to a drunkometer test about 7:55 P.M. the night of the accident (one hour and forty minutes after the accident) and reading on the drunkometer test was .187 per cent (.150 per cent or above is considered to be under the influence).
A Motion for Directed Verdict in the wrongful death actions was made by Defendant at the conclusion of Plaintiff's testimony and evidence and was denied by the Court.
The first point raised by the appellant on appeal is the denial of appellant's Motion for Directed Verdict in the wrongful death actions on the ground that the facts revealed the appellant's negligence was not one of the proximate causes of the second collision because Ramsey was negligent, as a matter of law, and that his (Ramsey's) negligence was, as a matter of law, an intervening, independent cause of the second collision, and that the second collision was, as a matter of law, an unnatural and improbable consequence of the appellant's negligence.
Appellant contends that his motion for a directed Verdict made at the conclusion of Plaintiff's case and renewed at the conclusion of all the evidence should have been granted on the grounds that the second accident (the Ramsey collision) was the independent, intervening efficient cause of the deaths. Appellant takes the position that Ramsey had level terrain for a long distance and should have seen the accident and stopped, and since there was no special circumstances which would prevent Ramsey from observing that which was before him the second accident was an independent, intervening, efficient cause or the proximate cause of the deaths. Appellant relies upon the case of Pope v. Pinkerton-Hays Lumber Company, Fla.App., 120 So.2d 227, in which Judge Wigginton quoted from and followed the rule announced by the Supreme Court, speaking through Justice Sebring, in the case of Cone v. Inter County Tel. & Tel. Co., 40 So.2d 148 (Fla. 1949); as follows:
"Not every negligent act of omission or commission gives rise to a cause of action for injuries sustained by another. It is only when injury to a person who himself is without contributing fault has resulted directly and in ordinary natural sequence from a negligent act without the intervention of any independent efficient cause, or is such as ordinarily and naturally should have been regarded as a probable, not a mere possible, result of the negligent act, that such injured person is entitled to recover damages as compensation for his loss. Conversely, when the loss is not a direct result of the negligent act complained of, or does not follow in natural ordinary sequence from such act but is merely a possible, as distinguished from a natural and probable, result of the negligence, recovery will not be allowed. Seaboard Air Line Ry. Co. v. Mullin, 70 Fla. 450, 70 So. 467, L.R.A. 1916D, 982, Ann.Cas. 1918A, 576. "Natural and probable" consequences are those which a person by prudent human foresight can be expected to anticipate as likely to result from an act, because they happen *314 so frequently from the commission of such act that in the field of human experience they may be expected to happen again. "Possible" consequences are those which happen so infrequently from the commission of a particular act, that in the field of human experience they are not expected as likely to happen again from the commission of the same act. See 38 Am.Jur. 712, Negligence, Sec. 61." (40 So.2d 149.)
See also Schatz v. 7-Eleven, Inc., 128 So.2d 901, (Fla.App. 1st 1961).
"If an independent efficient cause intervenes between the negligence and the injury, and the original negligence does not directly contribute to the force or effectiveness of the intervening cause, the original negligence is not regarded as a proximate cause of the injury, even though the injury might not have occurred but for the original negligence. A proximate cause stands next in causal relation to the effect. * * * A proximate cause produces the result in continuous sequence, and without which the result would not have occurred."
Quoted in General Telephone Co. of Florida, Inc. v. Mahr, 153 So.2d 13, 17 (Fla.App.2d 1963) from Tampa Electric Co. v. Jones, 138 Fla. 746, 190 So. 26 (1939).
Appellant concludes during the 2 to 4 minutes between the accidents, the victims could have moved to a place of safety, or the second accident could have been avoided had Ramsey been attentive and seen what was within his range of vision or within the range required by statute for effective visibility of headlights at night (350 feet under § 317.58, F.S.A., Loftin v. McCrainie, 47 So.2d 298, 302 (Fla. 1950) held:
"* * * No intervening cause is efficient unless it is independent of and not set in motion by the original wrongful act. As stated in Woodcock's Adm'r v. Hallock, 98 Vt. 284, 127 A. 380, 383: `The mere fact that there has intervened a voluntary act of a responsible agent does not necessarily make the final consequence of the negligence too remote to support an action. The test is to be found in the character of the intervening act. If it is, itself, a natural and proper result of the original negligence, it will not necessarily prevent a recovery thereon.'"
Appellee submits that since contributory negligence was not alleged, the failure of Mrs. Willis and her son to remove themselves from danger in less than two to four minutes could not as a matter of law amount to independent negligence which was unforeseeable particularly when the son, an eight-year old child, had been asleep at the time of the first accident and since Mrs. Willis was probably suffering a fractured skull due to having hit her head on the windshield in the first accident. Appellee notes the factual differences between the instant case and the cases cited by appellant and concludes that it would be more in point to cite a case dealing with the conduct the law expects of minors, Bermudez v. Jenkins, Fla.App., 144 So.2d 859, or with the conduct the law expects of those acting in a sudden emergency, White v. Hughes, 139 Fla. 54, 190 So. 446, or with the liability of a negligent actor who has injured another for subsequent injuries which would not have occurred except for the first injury, Eli Witt Cigar & Tobacco Co. v. Matatics, Fla., 55 So.2d 549.
Appellee takes the position that the second collision was a foreseeable natural consequence of the first. In support of the foreseeability he refers to the following facts:
1. The highway was fairly heavily traveled.
2. At the time of the first collision, it was dark.
3. There is evidence that before the second collision the appellant's car was in *315 the westbound lane of traffic facing in a slightly northwesterly (more westerly than northerly) direction with the headlights on and the appellee's car was in the eastbound lane of traffic facing in a northeasterly (more easterly than northerly) direction.
4. Ramsey, traveling about 50 miles per hour (legal speed at the point being about 55 miles per hour), dimmed his lights for what he thought was an approaching vehicle. He did not discern anything out of the ordinary until he was within about 80 plus feet of the Willis vehicle. He applied his brakes and skidded 81 feet into the wreck. Reaction time for braking is a minimum of one second and at 55 miles per hour one travels 80.6 feet per second.
5. Witnesses at the scene of the accident anticipated that other cars would run into the wrecked vehicle. It was foreseeable to them. For factual similarity the appellee cites the case of Anderson v. C.E. Hall & Sons, Inc., 131 Conn. 232, 38 A.2d 787.
In order for the appellants position to be sustained we must find there was no evidence in the record of this cause from which the jury could lawfully find that the appellant's negligence was one of proximate cause of the second collision and the deaths of Mrs. Willis and her son. In Teare v. Local Union No. 295 etc., Fla., 98 So.2d 79, the Court said:
"* * * When we consider the correctness of an order directing a verdict for the defendant at the close of plaintiff's evidence we necessarily must indulge every reasonable inference from the evidence which is favorable to the plaintiff. In order to support a verdict directed by the trial judge at the close of the plaintiff's evidence it should be clear that there is no evidence whatsoever that could in law support a verdict for the plaintiff. * * *"
We hold that the jury could lawfully find from the evidence in the record and the inferences that could be made therefrom the appellant's negligence was one if not the sole proximate cause of both collisions and the deaths of Mrs. Willis and her son.
The second point raised by the appellant on appeal is the denial of appellant's motion for a mistrial when counsel for plaintiff, in the presence of the jury, made reference to statements taken by an investigator for the State's Attorney's Office.
The Motion for Mistrial was made after the following question was asked the appellant in presence of the jury:
"Q (By Mr. Friend) Following this accident, Mr. Ellingson, and still on the night of the accident, did you give a statement to Mr. Dale Croy of the State's Attorney's Office at the Florida Highway Patrol headquarters?"
Appellant contends the question was highly improper for (1) no predicate had been laid for impeachment and (2) the statement was obviously privileged under F.S. Sec. 317.17, F.S.A. and (3) the obvious purpose of the question was to refresh any memories of jurors as to the recent manslaughter charge against Ellingson as a result of the deaths in this action.
The trial judge, in denying the motion, stated:
"The Court is of the view that the defendant has not been so prejudiced by any reference to that, because I think the jury as reasonable men would know that any death case would be investigated."
There is wide discretion in the trial judge to grant or deny motions for mistrials (32 Fla.Jur., Trial, Section 245, pages 506-507). We find no abuse of this discretion by the trial judge. The appellant *316 points out that the Court did not admonish the jury to disregard the question and answer; however, the record does not reflect that the admonition was ever requested.
The third point raised by appellant on appeal is the Court's overruling appellant's objection to reference to plea of guilty to driving while under the influence of intoxicating liquors in closing argument, when such plea was not introduced into evidence.
The appellant contends that a certified copy of the plea of guilty nor the original plea was never introduced into evidence in this case.
However, the appellant testified:
"Q Mr. Ellingson, on or about October 24, 1962, in the County Judge Court of Leon County, did you plead guilty as a result of the accident of December 3, 1961, to the charge of unlawfully driving or being in the actual physical control of a motor vehicle while under the influence of intoxicating liquors and affected to the extent that your normal faculties were impaired contrary to Section 317.20, Florida Statutes?"
* * * * * *
"Q (By Mr. Friend) Did you answer that last question, Mr. Ellingson? Did you so plead?"
"A Yes, I did."
We, therefore, hold that the reference to said plea was not error, but was well within the limits of proper argument.
The last question on appeal is that raised by the appellee's cross assignment of errors which challenged the lower Court's interpretation of Section 54.28, Florida Statutes, F.S.A.
In considering the set off provisions of Section 54.28, Florida Statutes, F.S.A., the trial court considered who had the beneficial interest in all of the monies recovered and applied the provisions of the statute accordingly. In a written memorandum accompanying his decision the trial judge held:
"The Court is of the view that Section 54.28, Florida Statutes, contemplates that when there is more than one tort feasor in connection with injuries or damages accruing to a party arising out of the same circumstances that recovery either directly or indirectly or beneficially by a party from one or the other joint tort feasor should be set off against any recovery against the other. It has further been made to appear that the Plaintiff, Douglas F. Willis, is the sole heir and beneficiary of the estate of Douglas F. Willis, II, and one of two heirs to the estate of his wife, the other heir of the estate of his wife being his daughter, Pamela Sue Willis, a minor 13 years of age and the responsibility of the Plaintiff. It thus appears that the plaintiff has been the substantial beneficiary of the settlements made."
We agree that the purpose and intent of the legislature in enacting the statute was to allow the one tort feasor to have the benefit of payment made by any other party who might be jointly liable. It matters not that the payment was made in a representative capacity  the true issue is who was the beneficial receiver of the payout.
The order of set off was proper.
We hold on all of the points raised by appellant, and on the appellee's cross-assignment of error that the trial judge correctly applied the principles of law involved.
Therefore, the judgment of the lower Court is affirmed.
STURGIS, C.J., and RAWLS, J., concur.